UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

KIM CARL,                                      :
                                               :
                    Plaintiff,                 :
                                               :     08 Civ. 4981 (RMB) (MHD)
        - against -                            :
                                               :     **DECISION & ORDER**
THOMAS GRIFFIN, et al.,                        :
                                               :
                    Defendants.                :
---------------------------------------------------------------x

I.      **Background**

        On or about May 30, 2008, pro se plaintiff Kim Carl ("Plaintiff" or "Carl") filed a

complaint ("Complaint") pursuant to 42 U.S.C. § 1983 against Thomas Griffin ("Griffin"),

Deputy Superintendent of Security at Mid-Orange Correctional Facility ("Mid-Orange") in

Warwick, New York; James Nichols, Superintendent at Mid-Orange; Jackie Ramos ("Ramos"),

Nurse at Mid-Orange; Mid-Orange Lieutenants Cestaro ("Cestaro") and Urbanski ("Urbanski");

and Mid-Orange Corrections Officers Mill ("Mill") and Dronke ("Dronke," and collectively,

"Defendants").  (See Compl., dated May 12, 2008.)  Plaintiff alleges that Defendants denied him

due process and retaliated against him for his and his family's exercise of their First Amendment

rights when, following a verbal dispute between Plaintiff and Griffin, Defendants, among other

things, searched Plaintiff's cell, ordered that he undergo a urinalysis, lodged a "false"

disciplinary charge against him, found him guilty on that charge after a "partial and bias[ed]

hearing," sentenced him to 30 days of confinement, and failed adequately to respond to freedom

of information law ("FOIL") requests filed by Plaintiff relative to these events.  (Compl. § D.)

        On September 29, 2009, the Court issued an order adopting United States Magistrate

Judge Michael H. Dolinger's report and recommendation ("Report"), dated September 1, 2009,

denying Defendants' motion, filed September 8, 2008, to dismiss the Complaint for Plaintiff's

failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"),

42 U.S.C. § 1997e(a).  (See Order, dated Sept. 29, 2009; Report, dated Sept. 1, 2009.)  The Court

determined that exhaustion should be excused because prison officials failed to timely advance

Plaintiff's grievance or otherwise prevented him from seeking his administrative remedies.  (See

Order at 2; Report at 15–16.)[1]

On August 30, 2010, Defendants moved for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), arguing, among other things, that

(1) Plaintiff "was given all the procedural due process protections guaranteed by the Fourteenth

Amendment"; (2) "[P]laintiff attempts to turn a series of legitimate and typical penological

actions into a constitutional claim by characterizing them all as retaliatory"; and (3) Defendants

should be entitled to qualified immunity because it was "objectively reasonable for

. . . [D]efendants to believe that their . . . penological actions did not violate any constitutional

rights."  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J., dated Aug. 30, 2010 ("Defs.

Mem."), at 2, 15, 20–21.)[2]

On December 6, 2010, Plaintiff submitted opposition papers restating the facts from his

Complaint and arguing that Defendants should not be granted summary judgment based upon,

among other things, Judge Dolinger's Report, Defendants' alleged discovery violations, and

---

[1]        Plaintiff appears to have been released from custody on March 25, 2010.  See N.Y.
Inmate Info., http://nysdocslookup.docs.state.ny.us; (Tr. of Proceedings, dated Mar. 8, 2010,
5:22–23.)

[2]        In connection with Defendants' motion for summary judgment, Defendants notified
Plaintiff that if he does not "respond to the motion for summary judgment on time with affidavits
or documentary evidence contradicting the facts asserted by [Defendants], the Court may accept
[D]efendants' factual assertions as true" and "[j]udgment may then be entered in [D]efendants'
favor without a trial."  (Not. to Pro Se Litigant Opposing Mot. for Summ. J., dated Aug. 30,
2010, at 2.)

Defendants' alleged violations of New York State Corrections Law.  (See Pl.'s Mem. of Law, dated Dec. 1, 2010 ("Pl. Opp'n")); N.Y. Correct. § 250.2.

On December 15, 2010, Defendants filed a two page letter in reply, noting, among other things, that "[P]laintiff has . . . failed to address any of the legal arguments asserted in [D]efendants' Memorandum of Law."  (Defs.' Ltr. to the Ct., dated Dec. 15, 2010 ("Defs. Reply"), at 1.)  The parties waived oral argument.  (See Admin. Order, dated Jan. 24, 2011.)

The following facts are not in dispute:

(i) Plaintiff, while an inmate at Mid-Orange, was leaving the mess hall at approximately 9:30 a.m. on January 18, 2008 when he became engaged in a brief verbal altercation with Griffin regarding Plaintiff's access through the mess hall's exit doors;

(ii) Griffin immediately reported to Urbanski that Plaintiff was "acting strang[ely] and making unusual comments";

(iii) Urbanski ordered that Plaintiff undergo a cell search and urinalysis "for suspicion due to his unusual behavior";

(iv) at approximately 10:15 a.m., Dronke searched Plaintiff's cell, where – according to Dronke's "Inmate Misbehavior Report," dated January 18, 2008 ("Misbehavior Report") – he "discovered several forms of expired medications";

(v) on that same morning, Plaintiff underwent a urinalysis which came back with "negative results";

(vi) on January 24, 2008, Cestaro held a Tier II disciplinary hearing ("Hearing") (having charged Plaintiff with violating Rule 113.14 of N.Y. Correct. § 270.2 ("Rule 113.14"), which prohibits inmate possession of "outdated" medication), at which Plaintiff stated that the

medication was his and affirmed that he was served with a formal copy of the charge against him on January 22, 2008;

(vii) at the end of the Hearing, Cestaro found Plaintiff guilty of violating Rule 113.14 and sentenced him to 30 days in "keeplock"; and

(viii) Plaintiff filed five FOIL requests related to these incidents.  (See Defs.' Rule 56.1 Statement, dated Aug. 30, 2010 ("Defs. 56.1"), ¶¶ 1, 9–11, 15, 17, 18, 20, 21; Tr. of Pl.'s Deposition, dated Dec. 3, 2009 ("Dep. Tr."), at 43:8–44:19; Decl. of Julia H. Lee, dated Aug. 30, 2010 ("Lee Decl."), Ex. B; Urbanski Mem., dated Mar. 4, 2008, Lee Decl., Ex. F; Misbehavior Report, dated Jan. 18, 2008, Lee Decl., Ex. C; Tr. of Hearing, dated Jan. 24, 2008 ("Hr'g Tr."), at 1, 2, 7, Lee Decl., Ex. D; Compl., Ex. A.)[3]

**For the following reasons, Defendants' motion for summary judgment is granted.**

## II.    Legal Standard

Summary judgment is appropriate "when, construing all evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Ruggiero v. Cnty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006) (citing Fed. R. Civ. P. 56(c)) (internal quotation marks and alterations omitted).  "[I]n order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in that party's favor."  Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003).

---

[3]      "Although [Plaintiff] has failed to submit [his] own Rule 56.1 Statement in response as required by the Local Rules, the Court has only deemed [Defendants'] stated facts to be admitted to the extent that they are uncontroverted by evidence in admissible form submitted by [Plaintiff] with [his] opposition papers."  Shmueli v. City of New York, No. 03 Civ. 1195, 2007 WL 1659210, at *1 n.1 (S.D.N.Y. June 7, 2007).

"The same standards apply to a pro se litigant, but such a litigant is given special latitude in responding to a summary judgment motion." Covington v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 5369, 2010 WL 572125, at *4 (S.D.N.Y. Jan. 25, 2010) (internal quotation marks omitted). "By the same token, however, a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Thompson v. Tracy, No. 00 Civ. 8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan. 17, 2008) (internal quotation marks omitted).

## III.    Analysis

### (1) Due Process Claim

Defendants argue that Plaintiff's claim – that Defendants denied him due process by sentencing him to 30 days of confinement on the basis of "false" charges and testimony (Compl. § D) – must be dismissed because Plaintiff "had no actual liberty interest since his confinement to keeplock was only 30 days," and because Plaintiff "was afforded sufficient procedural safeguards." (Defs. Mem. at 15–16.) Plaintiff does not appear to respond to this argument.[4]

"[A]n analysis of whether Plaintiff was denied due process turns first, on whether there exists an interest which has been deprived, and second, on whether the procedures implemented to protect that interest afforded due process." Harris v. Keane, 962 F. Supp. 397, 403 (S.D.N.Y. 1997) (citing Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992); Hewitt v. Helms, 459 U.S. 460, 472 (1983)).

---

[4]      "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Monachino v. Bair, No. 09 Civ. 3939, 2011 WL 349392, at *4 (S.D.N.Y. Feb. 1, 2011) (quoting Maher v. Alliance Mortg. Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009)). Because Plaintiff is pro se, the Court has analyzed his claims on the merits.

Plaintiff's due process claim fails because he cannot establish any "interest which has been deprived." Id.  "[T]he decisions in the Second Circuit are unanimous that keeplock of 30 days or less in New York prisons is not 'atypical or significant hardship,'" Smart v. Goord, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)), and, therefore, "does not implicate a liberty interest . . . of which Plaintiff would be entitled to due process protections," Harris, 962 F. Supp. at 404.[5]

"Even if Plaintiff could establish a cognizable liberty interest, he must still demonstrate that Defendants deprived him of that interest through insufficient process." Branch v. Goord, No. 05 Civ. 6495, 2006 WL 2807168, at *4 (S.D.N.Y. Sept. 28, 2006).  The evidence establishes that Defendants provided Plaintiff with "the minimum procedures to which prison inmates are entitled under the fourteenth amendment."  Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986); see Wolff v. McDonnell, 418 U.S. 539, 564–66 (1974).  That is, Plaintiff was given "(1) advance written notice of the charges at least 24 hours before the [H]earing."  Freeman, 808 F.2d at 953; (see Hr'g Tr. at 1 (Cestaro: "[T]he record indicates that you were served with a formal copy of the charges on 1/22/08 at 8:15am by Officer Garecky.  Is that correct?"  Carl: "Yes.").)  Plaintiff was afforded "(2) the opportunity to appear at the [H]earing, to call witnesses, and to present rebuttal evidence."  Freeman, 808 F.2d at 953; (see Hr'g Tr. at 1, 6; Dep. Tr. at 68:24–69:11, 89:18–23 (Def. Counsel: "Did you have an opportunity to talk about what happened during the hearing?"  Carl: "Yes, I did." . . . Def. Counsel: "[Y]ou could call witnesses but you chose not to call any witnesses at the hearing?" . . . Carl: "I didn't want to call any

---

[5]       There is also no indication that Plaintiff endured "unusual" keeplock conditions.  Palmer v. Richards, 364 F.3d 60, 66 (2d Cir. 2004).  "[T]he allegation that [P]laintiff was placed in keeplock confinement under otherwise normal conditions for thirty days . . . does not establish a claim of cruel and unusual punishment."  McDonald v. Rivera, No. 06 Civ. 410, 2008 WL 268345, at *8 (N.D.N.Y. Jan. 30, 2008) (citing Jackson v. Johnson, 15 F. Supp. 2d 341, 363 (S.D.N.Y. 1998) (same for 99 days in keeplock)).

6

witnesses [.]").)  And, Plaintiff was provided with (3) a written statement by the factfinders as to

the evidence relied on for their decision, and the reasons for the prison committee's actions."

Freeman, 808 F.2d at 953; (see Lee Decl. Ex E.)  "[P]laintiff was afforded all the process due."

Renelique v. Duncan, No. 03 Civ. 1256, 2007 WL 1110913, at *14 (N.D.N.Y. Apr. 12, 2007).

     Plaintiff's due process claim would fail even if the Court were to assume, arguendo, that

the Misbehavior Report and/or Cestaro and Ramos's statements at the Hearing were "false"

(Compl. § D) because "the key inquiry in assessing an allegation that an inmate has been found

guilty of false disciplinary charges is whether or not the prison has provided the inmate with the

minimum procedural due process protections," Franco v. Kelly, 854 F.2d 584, 587 (2d Cir.

1988); see Merced v. Moylan, 2007 WL 3171800, at *10 (N.D.N.Y. Oct. 29, 2007); Boddie v.

Schnieder, 105 F.3d 857, 862 (2d Cir. 1997);[6] see also Excell v. Woods, No. 07 Civ. 305, 2009

WL 3124424, at *22 & n.49 (N.D.N.Y. Sept. 29, 2009) ("[T]he Fourteenth Amendment does not

require any administrative review of disciplinary convictions.") (collecting cases); Blount v.

Brown, No. 10 Civ. 1548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) ("[A] plaintiff has

no property interest in obtaining FOIL documents." (internal quotation marks omitted))

(collecting cases); Freeman v. Goord, No. 02 Civ. 9033, 2005 WL 3333465, at *5 n.4 (S.D.N.Y.

Dec. 7, 2005) ("[D]eprivation of [a] prisoner's property does not violate Due Process" because

"New York provides adequate state court post-deprivation remedies for an inmate's loss of

property." (citing Hudson v. Palmer, 468 U.S. 517, 539–40 (1984))).

---

[6]    The record contradicts Plaintiff's claims of falsity.  Plaintiff admittedly possessed the medication cited in the Misbehavior Report.  (See Hr'g Tr. at 2, 4, 6 (Carl: "[W]hen I was in [a different prison] they. . . gave me that medication. . . . I had them update my medication and I just looked over it, I never really, it wasn't a lot I never paid attention to it."); Lee Decl. Ex. C.) And, Rule 113.14, to which the Misbehavior Report cites, provides, in pertinent part, that "[a]n inmate shall not possess **outdated** or unauthorized types or quantities of medication."  Rule 113.14 (emphasis added).

And, to the extent that Plaintiff attempts to assert a "substantive due process" claim by arguing that Defendants' actions "violat[ed]" New York law (see Compl.§ D; Pl. Opp'n at 6 (citing <u>Jackson v. Lefevre</u>, 494 N.Y.S.2d 797, 799 (Sup. Ct. 1985))), such claim would fail because "[s]ubstantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised," <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations and quotation marks omitted).

**(2) Retaliation Claim**

Defendants argue that "[P]laintiff fails to allege any protected speech or conduct as the impetus for the retaliation," and Defendants committed no cognizable "adverse action" against Plaintiff.  (Defs. Mem. at 6, 8–11, 17–18.)  Plaintiff (again) does not appear to respond.  <u>See Monachino</u>, 2011 WL 349392, at *4.

"[A] plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant[s] took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  <u>Davis v. Goord</u>, 320 F.3d 346, 352 (2d Cir. 2001) (internal quotation marks omitted); <u>see also</u> <u>Dawes v. Walker</u>, 239 F.3d 489, 491 (2d Cir. 2001) ("Courts must approach prisoner claims of retaliation with skepticism and particular care."), <u>overruled on other grounds by</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).

Plaintiff's retaliation claim fails because Plaintiff fails to show that he engaged in any constitutionally protected conduct.  <u>See</u> <u>Davis</u>, 320 F.3d at 352.  He alleges that Defendants retaliated against him for shaking his head and uttering "unbelievable I cant [sic] believe him" when Griffin blocked Plaintiff's access through the door from the mess hall.  (Compl. § D.)

8

Here, the alleged retaliation arose out of a verbal confrontation.  See Garrido v. Coughlin, 716 F. Supp. 98, 101 (S.D.N.Y. 1989); see Bell v. Hill, No. 10 Civ. 850, 2010 WL 4256578, at *2 (E.D. Cal. Oct. 21, 2010) ("Plaintiff fails to allege that he was engaged in any protected conduct" where "Plaintiff simply told [a prison official] he thought his behavior was inappropriate."); Riggs v. Miller, 480 F. Supp. 799, 804 (E.D. Va. 1979) ("[B]ickering, argumentative conversation" "not intended to reach anyone other than the defendant" is not "constitutionally protected activity."); Lugo v. Van Orden, No. 07 Civ. 879, 2008 WL 2884925, at *3 n.4 (N.D.N.Y. July 23, 2008).  Plaintiff's "brief and isolated verbal [encounter with Griffin] does not constitute protected First Amendment speech.  To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment."  Oriakhi v. Wood, No. 05 Civ. 53, 2006 WL 859543, at *5 (M.D. Pa. Mar. 31, 2006).[7]

Plaintiff also cannot establish any "adverse action" by Defendants because "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis, 320 F.3d at 352 (internal quotation marks omitted).  "A cell search is not considered to be an adverse action."  H'Shaka v. Drown, No. 03 Civ. 937, 2007 WL 1017275, at *19 (N.D.N.Y.

---

[7]     Two other activities alleged by Plaintiff are also not protected speech, namely a letter written by Plaintiff's "family member . . . [to] the inspector general on Jan[uary] 18[,] 2008 at 1.30 pm" (Compl. § D); and a letter written by Plaintiff, at some point during Plaintiff's time in keeplock, to the Commissioner of the New York Department of Correctional Services ("Commissioner") (Dep. Tr. at 39:17–40:4; see Compl. § D).  (Although Plaintiff provided the Court with copies of the Commissioner's responses to these letters (see Pl. Opp'n, Ex. A), the letters themselves do not seem to be included in the record.)  Because the cell search, urinalysis, and Misbehavior Report, which led to Plaintiff's punishment, all took place in the morning hours of January 18, 2008 – i.e., **before** these letters were written or received – "[P]laintiff's claim that he was retaliated against for [these letters] must be dismissed."  (Defs. Mem. at 7 (citing Gill v. Pilypchak, 389 F.3d 379, 380 (2d Cir. 2004)); see Compl. § D; Lee Decl. Ex C.)

Mar. 30, 2007); see Salahuddin v. Mead, 2002 WL 1968329, at *5–6 (S.D.N.Y. Aug. 26, 2002) (collecting cases).  Nor is "[b]eing forced to give a urine sample on one occasion . . . an adverse action [because it is not] sufficient to deter a person of ordinary firmness" from exercising his First Amendment rights.  Burgos v. Canino, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), aff'd, 358 F. App'x 302 (3d Cir. 2009); see Bumpus v. Canfield, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007).

Defendants' alleged "threat[s]" and/or "harass[ment]"of Plaintiff were also insufficiently direct or specific to deter an ordinary inmate from exercising his first amendment rights. [8] (Compl. § D); see Sharpe v. Taylor, No. 05 Civ. 1003, 2009 WL 1743987, at *9 (N.D.N.Y. June 18, 2009).  "[V]erbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (citing Cabassa v. Smith, No. 08 Civ. 480, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009)); see Bartley v. Collins, No. 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); Kemp v. LeClaire, No. 03 Civ. 844, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007); Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005).

And, Plaintiff's identification of the Misbehavior Report and his 30 day keeplock sentence as "adverse actions" is unpersuasive because "there is no dispute that . . . [P]laintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior

---

[8]     Plaintiff appears to allege three such instances:  (i) during Plaintiff's verbal exchange with Griffin, Griffin stated, "I will have something done to you"; (ii) Mill asked Plaintiff if Plaintiff got a "ticket" (infraction), presumably in relation to the events of January 18, 2008; and (iii) Cestaro said to Plaintiff at the end of the Hearing, "[W]hile you['re] in [keeplock,] think about why you curse[d] at . . . Griffin."  (Compl. § D.)

report.'" <u>Gayle v. Gonyea</u>, 313 F.3d 677, 682 (2d Cir. 2002) (quoting <u>Hynes v. Squillace</u>, 143 F.3d 653, 657 (2d Cir. 1998) (per curiam)); <u>see</u> <u>Battice v. Phillip</u>, No. 04 Civ. 669, 2006 WL 2190565, at *8 (E.D.N.Y. Aug. 2, 2006); (<u>see, e.g.</u>, Hr'g Tr. at 6; Dep. Tr. at 88:22–89:2 (Def. Counsel: "Just to be clear, the medication that Officer Dronke found in your cell, you had that in your possession, right, that was your medication?"  Carl: "Yes.").)  "Thus, even assuming retaliatory motive, [Defendants would be] entitled to summary judgment '[because] there were proper, non-retaliatory reasons for [Plaintiff's] punishment.'" <u>Hynes</u>, 143 F.3d at 657 (quoting <u>Graham v. Henderson</u>, 89 F.3d 75, 81 (2d Cir. 1996)); <u>see</u> <u>Lowrance</u>, 20 F.3d at 535.[9]

In his opposition papers, Plaintiff cites for the first time to the Fourth Amendment, although he does not (either in his Complaint or in opposition) specify a Fourth Amendment violation by Defendants.  "Even given the considerable leeway in pleadings afforded <u>pro se</u> litigants, Plaintiff here cannot raise a new claim for the first time . . . [at] summary judgment." <u>Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP</u>, 491 F. Supp. 2d 386, 402 (S.D.N.Y. 2007); <u>see</u> <u>Massie v. Ikon Office Solutions, Inc.</u>, 381 F. Supp. 2d 91, 95 (N.D.N.Y. 2005).

**(3) Qualified Immunity**

"Since the Court has concluded in this case that no First or Fourteenth Amendment violations occurred, the Court need not address qualified immunity." <u>Vega v. Lareau</u>, No. 04 Civ. 750, 2010 WL 2682307, at *15 (N.D.N.Y. Mar. 16, 2010); <u>see also</u> <u>Freeman v. Goord</u>, No. 02 Civ. 9033, 2005 WL 3333465, at *12 (S.D.N.Y. Dec. 7, 2005) ("Conduct that does not violate any constitutional right certainly does not violate a constitutional right that was 'clearly

---

[9]     "Because the [C]ourt finds that Plaintiff has not engaged in protected speech and did not suffer any adverse . . . action, the [C]ourt does not reach the issue of causation." <u>Reed v. Aiken Cnty.</u>, No. 09 Civ. 1744, 2010 WL 4238848, at *5 (D.S.C. Oct. 21, 2010); <u>see</u> <u>Davis</u>, 320 F.3d at 352.

established' at the time the conduct occurred." (quoting Mozzochi v. Borden, 959 F.2d 1174,

1179 (2d Cir. 1992))).

## IV.    Conclusion and Order

For the foregoing reasons, Defendants' motion for summary judgment [#56] is granted.

The Clerk of the Court is respectfully requested to close this case.

Dated:  New York, New York
        March 2, 2011

RICHARD M. BERMAN, U.S.D.J.

12